JERRY LAMPINSKI *et al. vs.* RHODE ISLAND RACING AND ATHLETICS COMMISSION AND RHODE ISLAND RACING AND ATHLETICS HEARING BOARD.

JUNE 1, 1962.

PRESENT: Condon, C. J., Roberts, Paolino, Powers and Frost, JJ.

PAOLINO, J. This is a petition for a writ of certiorari in accordance with the provisions of G. L. 1956, §41-2-6, to review and quash a decision of the racing and athletics hearing board. We issued the writ and pursuant thereto the board has certified the pertinent records to this court.

It appears therefrom that on February 16, 1962, the commission on horse racing and athletics granted the applications of Narragansett Racing Association, Inc. and Burrillville Racing Association for licenses to conduct night racing at their respective tracks, Narragansett Park and Lincoln Downs. Narragansett's license authorized it to operate from July 2, 1962 through July 28, 1962. Burrillville was authorized to operate from July 30, 1962 through August 25, 1962.

The petitioners and other persons and corporations not involved in this petition, pursuant to the procedure prescribed in G. L. 1956, §41-2-3, appealed to the board from the commission's action. At the hearing on those appeals evidence was presented for and against the granting of licenses for night racing. After the hearing the board found that none of the appellants was a person aggrieved within the meaning of the statute. On the basis of that finding it therefore denied and dismissed the appeals and affirmed the commission's action. Thereafter petitioners filed this petition.

The pertinent portion of G. L. 1956, §41-2-3, reads as follows: "Any person or persons aggrieved by a decision or order of the commission on horse racing and athletics

shall have the right to appeal to the racing and athletics hearing board by filing an appeal * * *." In the posture in which this case has been presented, the narrow question before us is whether the record supports the board's finding that these petitioners were not persons aggrieved within the meaning of the statute.

Five of the petitioners own, operate or represent drive-in and closed theatres doing business in this state. There is no evidence in the record indicating that any theatre owned, operated or represented by these petitioners is located in close proximity to either of the race tracks. They based their right to appeal on the ground that they were persons aggrieved because they would suffer decreased business receipts if night racing were permitted.

The sixth petitioner represents the Darlton Theatre, which is located on Newport avenue approximately one-half mile north of Narragansett Park. This petitioner contended in substance that night racing at Narragansett Park would create increased traffic conditions in the vicinity of the theatre; that the increased traffic would make it difficult for its patrons to gain ingress to the theatre and the parking lot which it operated for the benefit of its patrons; that the increased traffic congestion would substantially decrease the number of patrons who would go to the theatre; and that the volume of business at the theatre would be substantially decreased.

The remaining petitioners are homeowners whose residences are on direct routes to the race tracks. Mr. Jerry Lampinski's home is located about one-half mile north of Narragansett Park. Mr. Tullio Randolph resides within one-half mile of Lincoln Downs. Mr. F. Monroe Allen's home is on Pleasant View Circle, about 200 feet off Route 116 in the town of Smithfield.

Their objections were substantially similar in nature, namely, that the traffic conditions resulting from night rac-

ing would prevent them from enjoying the full benefit of their properties; that the increased traffic would create hazards and would prevent them from gaining ingress to and egress from their homes; that the noise and sounds from the loud speakers at the tracks would interfere with the full enjoyment of their properties; and that in their opinion the value of their properties would be decreased by night racing. Mr. Lampinski also objected on the ground that the resulting traffic condition would interfere with the little league and pony league programs at Slater Park and would endanger the safety of his children who participate in those activities.

As we have previously stated, the narrow question before us is whether the record supports the board's finding that petitioners were not persons aggrieved within the meaning of the statute. Before answering this question we must determine what the legislature meant by the use of the words "person or persons aggrieved." While it clearly granted a right of appeal to persons aggrieved, it did not expressly declare who were persons aggrieved within the meaning of the statute.

In *Tillinghast* v. *Brown University*, 24 R. I. 179, in interpreting the words "Any person aggrieved" as they were used in the statute upon which the probate appeal in that case was based, the court stated at page 183: "The rule generally adopted in construing statutes on this subject is that a party is aggrieved by the judgment or decree when it operates on his rights of property or bears directly upon his interest. * * * The word 'aggrieved' refers to a substantial grievance, a denial of some personal or property right or the imposition upon a party of a burden or obligation."

The rule set forth in *Tillinghast* has been followed consistently by this court. Only recently, in *Greenhalgh* v. *McCanna*, 90 R. I. 417, 158 A.2d 878, the court quoted the rule with approval and applied it to the facts of that case.

In our opinion the rule applies in the case at bar. The petitioners' contention to the contrary is without merit. Their argument that the public interest involved in administering the statute requires that they be included in the class of persons given the right of appeal regardless of the rule in *Tillinghast* is equally without merit. Under G. L. 1956, §41-2-4, the legislature vested the board with power to make decisions affecting the public interest and private rights, but it did not thereby enlarge the class of persons entitled to appeal from decisions or orders of the commission.

The petitioners next contend that even if the rule in *Tillinghast* is applied, they are persons aggrieved within that rule. They have cited several cases which, upon examination, we find are not applicable because of materially different factual situations which are not controlled by any statute like the one in this case. The zoning cases cited by them are clearly not applicable and, therefore, require no further discussion.

Keeping in mind the rule in *Tillinghast*, the question remains whether, in fact, any of the petitioners is a person aggrieved within the purview of G. L. 1956, §41-2-3. As the court stated in *Ankney* v. *Pettine,* 79 R. I. 471, at page 472: "The determination of who comes within the meaning of the statute is not always without difficulty. In most instances the answer to that question rests on the particular circumstances of each case." What are the particular circumstances in the case at bar?

The board considered the question whether petitioners, or any one of them, were persons aggrieved within the meaning of the statute. With respect to petitioners who own and operate theatres, it found that, with the exception of the Darlton Theatre, their objections were based almost entirely on competitive factors and they were not therefore persons aggrieved within the meaning of the statute. In

our opinion the board's decision with respect to these petitioners is not in error. They clearly are not persons aggrieved and therefore have no right of appeal under the statute.

With respect to the Darlton Theatre the board, in weighing the evidence on the question of whether the owner of this theatre was a person aggrieved, concluded that the evidence that the traffic conditions which might result from night racing at Narragansett Park would cause decreased theatre attendance was not sufficient to constitute this petitioner a person aggrieved. In arriving at this conclusion the board took into consideration evidence that the police could well handle the traffic conditions complained of. There is no evidence that the proposed night racing at Narragansett Park would deprive this petitioner of its right of ingress to and egress from its property.

In the circumstances we cannot say that the board's finding with respect to this petitioner is not supported by the evidence or that it is arbitrary or unreasonable. *Lombardo v. DiSandro,* 81 R. I. 393, 398. Moreover, after careful consideration, it is our opinion that this petitioner has failed to meet the test of the rule in *Tillinghast.*

We come now to the particular circumstances of the petitioning homeowners. None of them resided in the immediate area or neighborhood of either track. Their objections were based primarily on resulting traffic conditions and danger to children therefrom, noise, gasoline smells, difficulty in sleeping at night, and devaluation of their properties. The board gave no weight to petitioners' evidence that night racing would adversely affect the value of their properties. In weighing the objections based on increased traffic conditions, the board concluded that these conditions could be adequately handled by the police authorities. After considering all of the objections made by these petitioners the board concluded that they did not

qualify as persons aggrieved within the meaning of the statute.

Again we are compelled under the law to sustain the board's finding on this issue with respect to these petitioners. There was legal evidence to support its finding. The question of the weight of the evidence was for it to determine. On certiorari we do not weigh the evidence. The only question before us is to ascertain whether there was legal evidence to support the finding in question.

The petitioners cite *Wight* v. *New Jersey Racing Comm'n*, 128 N.J.L. 517, to support their contention that they are persons aggrieved. The opinion in that case expressly states that the petitioners resided in the neighborhood of the track in question. This is not so in the case at bar. In addition the New Jersey statute is not the same as the statute in the instant case. For these reasons the *Wight* case is not in point.

After careful consideration it is our opinion that the petitioners have failed to sustain their burden of proving that they were persons aggrieved within the meaning of G. L. 1956, §41-2-3, and the board did not therefore err in denying and dismissing their appeals.

The petition for certiorari is denied and dismissed, the writ heretofore issued is quashed, and the records certified to this court are ordered returned to the respondent board with our decision endorsed thereon.

ROBERTS, J., concurs in the result.

CONDON, C. J., concurring. I concur in the court's decision for a further reason. In my opinion the licensing power has been vested by the legislature finally and exclusively in the racing and athletics commission. As pointed out in my dissent in *Testa* v. *Waldman*, 93 R. I. 187, 172 A.2d 338, the legislature did not intend to grant a right of appeal from the commission's exercise of this power within the limits of its jurisdiction. In other words the power is dis-

cretionary and not subject to review by any other body. The limited form of appeal provided by G. L. 1956, §41-3-4, was intended to apply only to decisions of the commission which operated upon the legal rights of persons. Only such decisions are properly cognizable by the hearing board on appeal thereunder.

The petitioners here, who were remonstrants to the granting of the night racing dates by the commission, are not in the above-described category and therefore had no legal standing as appellants before the hearing board. While it decided to treat the question whether they were aggrieved by the commission's decision as one of fact, the board would have been warranted in disclaiming jurisdiction to consider their appeal at all under my view of the law.

Unless the power to license is vested finally and exclusively in the commission the hearing board may become a second and superlicensing body at the mere behest of any person who objects to the commission's grant of a license. This result was clearly not intended by the legislature when it established the hearing board as a quasi-judicial tribunal. Rather its intention was, in my opinion, to provide an appeal to the board only from decisions of the commission involving matters of a justiciable nature as distinguished from merely administrative matters.

Holding this view of the applicable law as to the right of appeal I am clearly of the opinion that the board did not err and therefore the petition for certiorari should be denied and dismissed and the writ heretofore issued should be quashed.

*Abedon, Michaelson & Stanzler, Julius C. Michaelson, Milton Stanzler, Richard A. Skolnik,* for petitioners.

*J. Joseph Nugent, Attorney General,* for respondents.

*Sherwood and Clifford, Raymond E. Jordan, William A. Curran,* for Burrillville Racing Association, amicus curiae.