Bill WARD, individually and as next friend of Jeff Ward; Robert Ward, individually and as next friend of Kelly Ward; Lester Carberry, individually and as next friend of Laura Carberry; and Alvin Gwin, individually and as next friend of Corey Gwin, Appellants (Petitioners/Plaintiffs),

v.

BOARD OF TRUSTEES OF GOSHEN COUNTY SCHOOL DISTRICT NO. 1, Appellee (Respondent/Defendant).

No. 93–14.

Supreme Court of Wyoming.

Dec. 17, 1993.

Walter C. Urbigkit (argued), and Harold F. Buck of Buck Law Offices, Cheyenne, for appellants.

Tracy J. Copenhaver (argued), Copenhaver, Kath & Kitchen, Powell, and Michael Warren, Torrington, for appellee.

Before MACY, C.J., and THOMAS, CARDINE, GOLDEN and TAYLOR, JJ.

CARDINE, Justice.

This is an appeal brought by the parents of LaGrange, Wyoming students challenging a decision by the Board of Trustees of Goshen County School District No. 1 to close the junior and senior high schools in that town. In the district court they asserted that the closing was improper because (1) the process used in making the decision violated the open meeting laws and (2) the decision was arbitrary and capricious and not supported by substantial evidence. The district court ruled in favor of the board of trustees, and the parents appealed to this court.

We affirm.

The parents raise three issues for review:

1. Belated filing of documents and written material in district court does not provide relevant evidence for judicial review on a petition for review in district court or for consideration on appeal by the supreme court.

2. Denial of an open meeting pursuant to Wyoming statute and rejection of a citizen's right to legal representation and appearance before a governmental agency at a public meeting denies due process and violates state law mandating reversal of the agency action consequently taken.

3. The action of school board in discontinuing education at the LaGrange school for grades 7 & 8 (Jr. High) and 9–12 (Senior High) was taken without the support of substantial evidence and was arbitrary and capricious in result.

The Board rephrases the issues somewhat:

1. Was the designation of record on appeal filed by the defendant/appellee on August 10, 1992 a "belated filing" as alleged by appellants, or was the designation of record on appeal filed in accordance with Rule 12.07 and within the time allowed by the reviewing court?

2. Were there any denials or violations of the open meeting laws of the State of Wyoming which nullify the school board's decision to consolidate LaGrange grades 7–12 with Southeast?

(a) Is there a citizens' right to legal representation before a governmental agency at a work session, and if so, was any such right denied?

3. Was the action taken by the Board of Trustees of Goshen County School District No. 1 arbitrary and capricious or without support of substantial evidence?

## FACTS

The Board of Trustees of Goshen County School District No. 1 (Board) had been aware for some time that the school district was faced with budget problems. While the Board considered ways to alleviate those problems, one of the options that arose was the possibility of closing LaGrange grades 7–12 (LaGrange).

Beginning in early March 1992, rumors began to circulate that the Board was considering closing LaGrange. On March 10, 1992, at a regularly scheduled Board meeting, a petition was presented by LaGrange residents which requested that the Board not close the LaGrange schools.

In response to these concerns, Paul Novak (Novak), the superintendent of schools for Goshen County School District No. 1, arranged a meeting between the Board and the residents of LaGrange. That meeting was held on April 2, 1992, and was attended by Novak and three members of the Board. At this meeting, the parents of LaGrange students (Ward) were accompanied by their attorney. The chairwoman of the Board, Donna Duncan (Duncan), declined to hold the meeting if Ward's attorney was going to be present. The attorney left, and the meeting was held. The discussion during the meeting centered around the budget problems and the effects that closing the school would have on those problems.

A second meeting was held on April 6 in LaGrange with the full board in attendance. Again, Ward's attorney attempted to attend the meeting. Duncan stated that she thought attorneys were not necessary for this meeting. She suggested that if Ward's attorney was going to be present, the Board should also have its attorney there and Ward should pay for the cost. Rather than agree to that, Ward had their attorney leave the meeting. The meeting then proceeded with a discussion on the school district's finances, the possible closing of LaGrange and its effects, and any alternatives to closing that may be available.

A special meeting was held on April 13, where the possible closing was again discussed. Ward's attorney attended and participated in this meeting. On April 14 a regularly scheduled Board meeting was held. At this meeting the Board voted to close the LaGrange 7–12 grades. The parents as representatives of LaGrange school children, have brought this action challenging that decision.

## DISCUSSION

### A. THE RECORD

■ The first issue raised by Ward is whether the Board properly filed the record on appeal with the district court. The petition for review was filed by Ward on May 7, 1992, and the Board's designation of the record was filed on August 10, 1992. Ward asserts that by filing their designation of the record more than 60 days after the petition for review was filed, the Board failed to comply with the time requirement of W.R.A.P. 12.07. Consequently, Ward argues that the record as designated by the Board is not properly before this court.

Rule 12.07 provides in part:

Within 60 days after the service of petition, *or within the time allowed by the reviewing court,* the agency shall transmit to the reviewing court the original or a certified copy of the entire record of the proceedings under review and a separate letter of transmittal marked for the personal attention of the judge or judges of the reviewing court. [emphasis added]

There is no dispute that the Board is an agency within the meaning of the Wyoming Administrative Procedure Act. W.S. 16–3–101(b)(i) (1990).

Determinative to this issue is a passage in the district court's order:

At the close of the hearing on July 30, 1992, *the parties agreed that there need be no further evidentiary hearing and that the Defendant–Respondent [Board] would file the complete record on appeal* after which each side would be entitled to file a brief regarding the issue of the Petition for Review or for Injunctive or Declaratory Relief. *Respondent did, in accordance with the Court's Order, file the Record on Appeal* and Plaintiffs and Defendant each timely filed Briefs in support of or in opposition to the Petition for Review. [emphasis added]

The Board filed the record within the time allowed by the reviewing court. W.R.A.P. 12.07. Ward did not object to the filing of the record at that time. In fact, from the language of the district court's order, it appears that Ward explicitly agreed to the filing of the record. Accordingly, Ward's argument is without merit, and the record is properly before this court.

### B. OPEN MEETINGS

#### 1. APRIL 2 AND APRIL 6 MEETINGS

■ Ward challenges the propriety of the April 2 and 6 meetings. Ward asserts that the meetings violated W.S. 16–4–403 because the Board took "action." Essentially, Ward claims that although the formal vote to close the schools took place at the April 14 meeting, for all intents and purposes, the decision was made at, or sometime in between, the earlier informal meetings. This, Ward claims, violates the statute and requires this court to invalidate the closing.

We begin by looking at the relevant statute, W.S. 16–4–403 (1990), which states:

(a) All meetings of the governing body of an agency are public meetings, open to the public at all times, except as otherwise provided. No action of a governing body of an agency shall be taken except during a public meeting following notice of the meeting in accordance with this act. Action taken at a meeting not in conformity with this act is null and void and not merely voidable.

"Action" and "meeting" are defined in W.S. 16–4–402(a) (1990) as:

(i) "Action" means the transaction of official business of an agency including a collective decision of a governing body, a collective commitment or promise by a governing body to make a positive or negative decision, or an actual vote by a governing body upon a motion, proposal, resolution, regulation, rule, order or ordinance;

\*　　\*　　\*　　\*　　\*　　\*

(iii) "Meeting" means an assembly of the governing body of an agency at which action is taken[.]

■ It is undisputed that the April 2 and 6 meetings do not satisfy the notice requirements of W.S. 16–4–404 (1990). Thus we are confronted with the question: What action, if any, taken at those meetings is void as provided in W.S. 16–4–403(a). We have held that agencies may hold informal meetings for

informational purposes so long as no action is taken at them. *Emery v. City of Rawlins,* 596 P.2d 675, 679 (Wyo.1979). That case involved a city council not a school board. However, both are subject to the same open meeting laws. Therefore, the logic of that case is equally applicable to this one. So long as no action is taken, a governmental entity, which is subject to the open meeting requirements, can hold sessions for the purpose of obtaining or disseminating information.

The key to this issue is whether the Board took action at these meetings. There is no transcript, so it impossible to determine what exactly happened at the meetings. However, Ward points to no evidence that shows a collective decision was made or a vote was taken. *See Emery,* at 679–80. Ward's argument is based solely on conjecture and speculation. Without any evidence to the contrary, we cannot say that these meetings violated the statute. *Id.*

On the other hand, there is sufficient evidence that the Board did comply with the statute. Transcripts of the special meeting on April 13 and the regular meeting on April 14 are in the record. There is no dispute about the propriety of these meetings. The record shows that all of the relevant issues to the school closing were discussed at the April 13 meeting. The Board explained the problem to the citizens of LaGrange, and they were allowed ample opportunity to speak and offer alternatives. The vote to close the school occurred at the April 14 meeting. Since these meetings met the requirements of W.S. 16–4–403 and –404, the actions taken were proper.

### 2. *EXCLUSION OF ATTORNEY*

We now turn to the second issue raised by Ward, the exclusion of their lawyer from the April 2 and 6 meetings. Ward contends that the exclusion denied them due process and violated the open meeting law as provided in W.S. 16–4–403(b) (1990):

> A member of the public is not required as a condition of attendance at any meeting to register his name, to supply information, to complete a questionnaire, or fulfill any other condition precedent to his attendance. A person seeking recognition at the meeting may be required to give his name and affiliation.

There was no violation of this statute because it is inapplicable to the informational meetings of April 2 and 6. As we have already pointed out, there was no action at these meetings. The definition of "meetings" under the act requires an assembly of the agency at which action is taken. W.S. 16–4–402(a)(iii). Since there was no action at the April 2 and 6 assemblies, there was no "meeting" under the act. Thus the act is not applicable, and the exclusion of Ward's attorney did not violate the statute.

Ward also asserts that the Board had no authority to require Ward to pay for the Board's attorney as a condition for the presence of their attorney and that the exclusion violated the due process clause of the Wyoming Constitution. Wyo. Const. Art. 1, § 6. Ward contends that since there is a constitutional right to an education in Wyoming, the students have a property interest. Therefore, they argue, the exclusion of their lawyer from the public meetings violated due process.

■ In order for due process to attach, the party claiming a violation of due process must show that it has a protected interest in life, liberty or property. *Meyer v. Norman,* 780 P.2d 283, 289 (Wyo.1989). The party must then demonstrate that the interest has been infringed in an impermissible way. *Id.* A public education is a property right which cannot be taken away from a student without some measure of procedural due process. *Clements v. Bd. of Trustees,* 585 P.2d 197, 204 (Wyo.1978).

■ Ward's argument that exclusion of their lawyer violated due process fails for two reasons. First, the April 2 and 6 "meetings" were informational gatherings not covered by the Wyoming statutes. The Board did not have to hold the meetings but did so as a courtesy to the citizens of LaGrange. Only when there is action by a state actor to deprive a person of life, liberty or property, is due process required. *Hatfield v. Rochelle Coal Co.,* 813 P.2d 1308, 1311 (Wyo.1991). Since the "meetings" were not held under

the open meeting statute, no process was due because there was no state action which deprived Ward of any property. The April 13 and 14 meetings were held pursuant to the open meeting statute, and Ward's attorney was afforded an opportunity to participate. The propriety of those meetings is not questioned, therefore whatever process was due to Ward under the statute was satisfied by those two meetings.

■ Second, Ward cites no cases in his brief, nor can we find any, where a student has a property interest in attending a specific school. Under Wyoming law, a student has a property interest in obtaining a public education. *Clements*, at 204. However, a student does not have a property· interest in where he receives that education. *See O'Neal v. School District No. 15 School Board*, 451 P.2d 791, 793 (Wyo.1969) (sole prerogative of school board to determine whether to maintain school or to transport children); W.S. 21-3-110(a)(x) (Cum.Supp. 1993) (duty of the board of trustees to fix the site of each schoolhouse considering the needs of the people, the district, and the standards of the state board). Since Ward has not shown a property interest, their due process claim fails.

Since we have found no due process violation, we need not determine whether the Board has the authority to require citizens to pay for the Board's attorney as a condition for the presence of the citizens' attorney.

## C. THE SCHOOL CLOSING DECISION

■ Ward asserts that the Board's decision to close the LaGrange school must be reversed because the decision was not based on substantial evidence. The parties do not dispute that the main reason for closing the school is financial. What the parties do dispute is the amount of savings the closing will bring to the district. Ward asserts that the Board's numbers do not add up to the claimed projected savings. Ward also claims that the Board ignored certain closing costs and cost saving alternatives to closing that the town had said it would implement if the school was kept open. Consequently, Ward argues that the record does not support the Board's decision and, as a result, its decision

to close the school was arbitrary and capricious.

■ This court has consistently stated that we will interfere with school board decisions only if they are arbitrary and capricious or fraudulent. *Roberts v. Lincoln County Sch. Dist. No. One*, 676 P.2d 577, 580 (Wyo. 1984); *Hyatt v. Big Horn Sch. Dist. No. 4*, 636 P.2d 525, 529 (Wyo.1981). We will not substitute our judgement for that of the school board unless abuse is shown. *Roberts*, at 580.

One way abuse can be shown is if the agency failed to follow particular factors which are required by statute. *Holding's Little America v. Bd. of County Comm'rs*, 670 P.2d 699, 704 (Wyo.1983). The applicable statute in this case is W.S. 21-3-110(a)(x) which allows the Board to "[f]ix the site of each schoolhouse considering the needs of the people of each portion of the district and the standards of the state board." So long as there is evidence in the record to support the decision in light of the factors in the statute, we must affirm. *Holding's*, at 704.

The amount of evidence that is required is substantial evidence, which we have defined as

such relevant evidence as reasonable minds would accept as adequate to support a conclusion. In determining whether that quantum of evidence is present, all of the evidence on the record, both that which supports and that which conflicts with the agency's decision must be reviewed, and the Court must determine whether the agency could reasonably conclude what it did. The standard requires more than a mere scintilla of evidence, more than a mere suspicion that a certain fact exists. However, once that measure of evidence has been found to exist, the possibility of drawing two inconsistent conclusions from a body of evidence does not prevent a finding that the conclusion drawn by the administrative agency was supported by substantial evidence.

*Knight v. Environmental Quality Council*, 805 P.2d 268, 274 (Wyo.1991) (citations omitted).

After a careful review of the record, we hold that there was substantial evidence to support the Board's decision to close the LaGrange school. The record clearly demonstrates that the Board considered all options and information relating to the closing of the LaGrange schools. The record shows that the following information was before the Board when it made its decision: (1) projected revenues and expenses for the district for the next school year; (2) projected budget deficit for the district for the next year; (3) a report of the projected state budget deficit; (4) the cost of education per pupil throughout the district, which was highest at LaGrange; (5) actual and projected enrollments for each school within the district; (6) the diversity of classes offered at each school; (7) transportation costs; (8) teacher salaries and status (tenured versus non-tenured); and, finally, (9) various alternatives to closing LaGrange including a possible mill levy increase in LaGrange. The record shows that the Board looked at all the information, in the context of the district as a whole, to determine whether closing LaGrange was the best option. Of course, the closing of the school is not supported by every factor. However, based on the record as a whole, the Board could reasonably conclude that closing LaGrange was the best option, and its decision is supported by substantial evidence.

▮ Ward strenuously argues that the Board made mathematical errors in its calculations of projected budget savings and that the Board completely ignored alternatives suggested by them. Once we have found an agency's decision to be supported by substantial evidence, we will not substitute our judgment for that of the agency. *Mountain Fuel Supply Co. v. Public Serv. Comm'n,* 662 P.2d 878, 882 (Wyo.1983). We are required to affirm the agency's decision. *Id; see also Parker Land & Cattle Co. v. Wyoming Game & Fish Comm'n,* 845 P.2d 1040, 1066 (Wyo. 1993). The Board was charged with that decision, and it acted within its discretion based on the facts available to it. Therefore, the Board's decision must be affirmed because it was based upon substantial evidence and was not arbitrary or capricious.

## CONCLUSION

Closing a school is always a painful and traumatic experience, both to the residents and those who have to make that decision. The Board of Trustees is charged by law with the sometimes difficult job of running the education system. It cannot please everyone. While we sympathize with the residents of LaGrange, the Board's decision did not violate the open meeting laws nor was it arbitrary or capricious.

For the foregoing reasons, the district court is affirmed.